[Civ. No. 10121. Fourth Dist., Div. One. July 28, 1970.]

WILLIAM B. WARD III, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
COUNTY OF SAN DIEGO, Real Parties in Interest.

## COUNSEL

Greenberg & Glusker and Kent Keller for Petitioner.

No appearance for Respondent.

Bertram McLees, Jr., County Counsel, and Lawrence Kapiloff, Deputy County Counsel, for Real Party in Interest.

## OPINION

**AULT, J.**—William B. Ward III (Ward) petitioned this court for a writ of mandate, pursuant to Code of Civil Procedure, section 416.3, after the superior court denied his motion to quash service of summons issued on the County of San Diego's complaint to collect delinquent unsecured property taxes. Real party in interest, the County of San Diego (County), filed opposition, and we issued an order to show cause. Both parties filed additional points and authorities.

On January 27, 1969, the County filed a complaint against Ward and the executors of the estate of Wilbur Clark, deceased, for delinquent unsecured property taxes. The County alleges Ward and the executors were, on the first Monday in March 1966, the owners of a possessory interest, a leasehold, in certain property leased from the San Diego Unified Port District. It alleges between that date and June 30, 1966, the property was assessed and unsecured property taxes were levied and appeared upon the unsecured assessment roll. It further alleges the taxes were unpaid on September 1, 1966, and have remained unpaid and are due and owing together with penalties which have accrued. It prays judgment accordingly.

Service upon Ward was obtained by publication of the summons and by personal service upon him in Fairfield County, Greenwich, Connecticut, where he now resides. The County's declaration for order for publication of summons states Ward was a resident of California when the cause of action accrued, "on the first Monday in March 1966."

At the time in question, Code of Civil Procedure, section 417, read: "Where jurisdiction is acquired over a person who is outside of this State by publication of summons in accordance with Sections 412 and 413, the court shall have the power to render a personal judgment against such person only if he was personally served with a copy of the summons and complaint, and was a resident of this State (a) at the time of the commencement of the action, or (b) at the time that the cause of action arose, or (c) at the time of service."

The County relies on subdivision (b) to establish jurisdiction, contends Ward was a California resident on the first Monday in March 1966, and claims the cause of action for unpaid taxes arose on that date. Ward contends the cause of action did not arise until the unpaid taxes became delinquent, September 1, 1966. He further urges service upon him under section 417 subdivision (b) was ineffective to confer jurisdiction and should be quashed because he was not a California resident on that date.

The crucial questions for determination are: (1) When did the County's

right to sue for the unpaid taxes accrue? (2) Was Ward a resident of California on that date?

The trial court generally found Ward was a resident of California when the cause of action arose. It failed to specify the date upon which the cause of action arose and did not indicate any specific date upon which it found Ward to be a resident of California.

Ward's affidavit in support of the motion to quash service of summons states: He left California, and the United States, on June 1, 1966, to establish permanent residence in Turkey, where he was involved with the Turkish government in a hotel business venture; he sold his family residence in La Jolla, California, and leased a house for one year in Istanbul in June 1966; his wife and children joined him in Turkey on or about July 1, 1966; he maintained his permanent residence in Istanbul from June through the latter part of December 1966, when he returned to the United States because the business venture with the Turkish government proved unsuccessful.

Ward concedes he was a California resident on March 1, 1966, but denies he was a resident of California on September 1, 1966.

The County offered no evidence Ward was a California resident on September 1, 1966, in opposition to the motion to quash. To the points and authorities filed in opposition to the motion, the County attached a copy, apparently uncertified, of a petition in bankruptcy filed, on August 14, 1967, by Ward in the United States District Court, Central District of California. In the petition, Ward stated he was a resident of that judicial district "for a longer portion of the six months immediately preceding the filing of this petition than in any other judicial district." Assuming the petition may be properly considered, its contents do not establish Ward to have been a resident of California on September 1, 1966, nor do they in any manner refute the positive allegations Ward was a resident of Turkey from June to December 1966, contained in his affidavit in support of the motion to quash.

By filing the motion to quash service of summons (Code Civ. Proc., § 416.1), Ward placed upon the County "the burden of proving the facts that did give the court jurisdiction, that is, the facts requisite to an effective service." (*Coulston* v. *Cooper,* 245 Cal.App.2d 866, 868 [54 Cal.Rptr. 302].) If, as contended by Ward, the County's cause of action for the unpaid taxes arose on September 1, 1966, the County has failed to meet its burden of proving an effective service on Ward, because it produced no evidence tending to show he was a California resident on that date.

It is not disputed the taxes which the County seeks to collect are un-

secured taxes on property which the assessor had placed upon the "unsecured roll." Revenue and Taxation Code, section 2901, provides:[1] "Taxes on unsecured property are due on the lien date." Section 2922 provides in part: "Taxes on the unsecured roll . . . if unpaid are delinquent August 31st at 5 p.m., and thereafter a delinquent penalty of 6 percent attaches to them."

■ Ward contends the County's authority to sue for unpaid taxes is statutorily derived, and the authorizing statute, section 3003, limits the County's right to sue for delinquent taxes only. Section 3003 provides: "Where *delinquent* taxes or assessments, including those on personal property, are not a lien on real property sufficient, in the judgment of the assessor or the board of supervisors, to secure the payment of the taxes or assessments, the county may, in any civil action, sue the taxpayer in its own name for the recovery of the *delinquent* taxes or assessments, with penalties and costs." (Italics added)

We believe the section is applicable to the taxes here under consideration and the County's right to sue for their collection did not accrue until they became delinquent on September 1, 1966.

The County argues section 3003 is not applicable to unsecured property. It contends the section refers to taxes which are a lien on property and taxes on the unsecured roll do not constitute a lien. The contention is without merit and is based upon a faulty premise. The taxes levied on petitioner's leasehold interest did constitute a lien, the very lien contemplated by section 3003.

A leasehold is a possessory interest (§ 107, subd. (a)). It is defined by statute as real property (§ 104, subd. (a)), and has been considered as such for taxation purposes since 1872 (*Forster Shipbuilding Co.* v. *County of Los Angeles,* 54 Cal.2d 450, 455 [6 Cal.Rptr. 24, 353 P.2d 736]). The tax on a possessory interest is a lien because section 2187 provides: "Every tax on real property is a lien against the property assessed." Moreover, section 2190.2 specifically provides: "Every tax on an assessment of a possessory interest . . . shall become a lien on such possessory interest . . . ." (Also see § 2191.3)

Section 3003 applies because the tax on the leasehold is a lien against that interest, but not considered as sufficient security for the payment of taxes under sections 107 and 109. In *County of Los Angeles* v. *Continental Corp.,* 113 Cal.App.2d 207 [248 P.2d 157], the court, in considering the question of the statute of limitations in an action to recover taxes on an oil and gas leasehold, concluded neither section 107 nor section 3003 per-

---

[1]All references are to Revenue and Taxation Code unless otherwise specified.

mitted suit to be brought until the date of delinquency. At page 214 the court stated: "As we have seen, both sections 107 and 3003 of the Revenue and Taxation Code, authorizing the institution of suit to enforce the payment of taxes, provide that suit may be instituted 'in the *event of delinquency*' or with respect to 'delinquent' taxes. It would therefore appear that no action to enforce payment of such taxes could be maintained under either section prior to the date when they became delinquent. From this it necessarily follows that the statute of limitations would not commence to run until the date of delinquency, when, for the first time, action to enforce payment thereof may be maintained."

In view of the express language contained in section 3003, the plain provisions of the other sections of the Revenue and Taxation Code which we have cited, and the holding in *County of Los Angeles* v. *Continental Corp., supra,* 113 Cal.App.2d 207, we reject without further discussion the County's contentions: (1) its right to sue for the taxes involved accrued as of the first Monday in March 1966, by necessary implication from the provisions contained in section 2914, and (2) its cause of action arose the first Monday in March 1966, but it was under "disability" to sue until the tax was delinquent.[2]

We conclude the cause of action sued upon did not arise until the tax became delinquent, September 1, 1966. Since the County produced no evidence Ward was a California resident on that date, the trial court's finding Ward was a California resident on the date the cause of action arose is unsupported. Because Ward was not a California resident on the date the cause of action arose, the court did not acquire jurisdiction under the provisions of Code of Civil Procedure, section 417, subdivision (b), and the motion to quash service of summons should have been granted.

Let a peremptory writ of mandate issue as prayed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

---

[2]In a practical sense, we find it difficult to envision how an individual can be considered liable to pay, and subject to suit for, a property tax before the property is assessed and the tax levied. As *petitioner points out, the lien date is the date the taxing authority perfects its lien,* so that it is superior to liens perfected later by other creditors. The delinquency date denotes the time after which the taxpayer's payment is overdue.