Filed 10/10/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| GLOVIS AMERICA, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF VENTURA, <br><br> Defendant and Respondent. | 2d Civil No. B286538 <br> (Super. Ct. No. 56-2015- <br> 00475755-CU-OR-VTA) <br> (Ventura County) |

When a lease of federal lands includes an option to extend its term and the tax assessor reasonably concludes that the option will likely be exercised, the value of the leasehold interest is properly based on the extended term. In this case, Glovis America, Inc.,[1] appeals from the judgment of dismissal entered after the trial court sustained without leave to amend the County of Ventura's (the County) demurrer to Glovis's complaint for refund of property taxes. Glovis contends the County's Assessment Appeals Board (the Board) erred when it determined

---

[1] Glovis is the successor in interest to Global Auto Processing, Inc., which is the party named in the lease and many of the proceedings discussed below. We refer to both companies as Glovis throughout the opinion.

that: (1) Glovis's lease with the U.S. Navy includes an option to extend its term of possession of Navy lands, and (2) it was reasonable to assume that the option would be exercised, thereby justifying a higher tax valuation. We affirm.

FACTUAL AND PROCEDURAL HISTORY

In 2007, Glovis began to lease land from the Navy to provide vehicle inspection and processing services at the Port of Hueneme. In 2013, Glovis and the Navy signed a five-year lease that is exempt from federal contract term limits. (See 10 U.S.C. § 2667.) Paragraph 2 of the lease states:

> **TERM**. The *initial* term of this Lease shall be for five-years [*sic*] commencing on **September 16, 2013**[,] and end [*sic*] on **September 15, 2018**, with *two five-year options* at the request of the Lessee and approval of Government, unless sooner terminated under Paragraph [15].
>
> Release Rate. If the LESSEE requests an additional five-year term, LESSEE shall notify LESSOR at least 180 days prior to the ending date noted above to provide sufficient time for completion of an updated Appraisal which is required to estimate the Market Rental Value of the leased lands. The appraisal cost shall be borne by the LESSEE. The appraisal will be ordered and managed by the NAVFAC Southwest Senior Appraiser to ensure that all Federal Appraisal Standards are met.

2

(Italics added.)  Paragraph 3.2 specifies Glovis's annual rent for the initial lease term.  Paragraph 3.1 permits Glovis to perform long-term maintenance of the leased premises in lieu of paying rent.  Paragraph 3.3.4 allows for renegotiation of these terms upon any extension of the lease.

The Ventura County Assessor issued a tax bill for the 2014-2015 tax year, and a supplemental tax bill for 2013-2014.  The assessor determined that Glovis's reasonably anticipated term of possession is 15 years.  He valued Glovis's lease based on the 15-year term.

Glovis appealed the assessments to the Board in October 2014.  Glovis conceded it had the burden of showing the assessments were incorrect.  Citing the lease and a 2011 newspaper article, Glovis claimed Paragraph 2 did not include an extension option because:  (1) Glovis lacked the unilateral right to extend the lease term, (2) the contract was subject to competitive bidding every five years, and (3) previous leases did not include options.  Even if Paragraph 2 did include an option, it could not be determined whether it would be exercised.

The evidence showed that this was Glovis's fifth lease with the Navy.  All of the prior leases were renewed.  While prior leases were subject to competitive bidding, this one was not.  And this was the first lease to include an option to extend the lease term.

Additionally, a newspaper article quoted a Glovis representative as saying that the lease was "a critical part of [its] plan to offer . . . customers long-term stability at a port strategically located just north of the Los Angeles market."  Relocating from Port Hueneme would be a challenge.  Glovis "look[ed] forward to a long business relationship" with the Navy.

3

The Board determined that Glovis did not meet its burden of showing the assessments were incorrect. Glovis presented no evidence of the parties' intent when they included the option language in Paragraph 2. It presented no evidence that the Navy did not intend to approve any lease extension. To the contrary, Glovis's previous relationship with the Navy, the parties' desire for long-term stability, Paragraph 2's rental renegotiation term, and Paragraphs 2 and 3.3.4's implied exemption from federal competitive bidding requirements showed that the parties contemplated a 15-year term of possession.

Glovis challenged the Board's determinations in the trial court. After the court granted the County's motion for judgment on the pleadings with leave to amend, Glovis filed an amended complaint, which included an amendment to the lease executed 12 days after the court's ruling on the County's motion. The amendment states that the parties intend that the lease: (1) "provide for a stated term of five years," (2) give Glovis a "right to request" a term extension, and (3) permit the Navy to approve or reject any extension request. It also states that the parties did not intend to convey "any rights in law or in equity in the event a request for extension is rejected by [the Navy]."

The amendment also replaces Paragraph 2 of the lease with the following language:

> **TERM**. The initial term of this Lease shall be for five-years [*sic*] commencing on **September 16, 2013**[,] and ending on **September 15, 2018**, unless sooner terminated under Paragraph 15.

4

Extension Requests.  LESSEE may request that GOVERNMENT extend the term of the lease for an additional five-year period (an "Extension Request"). Any Extension Request may be approved or rejected by GOVERNMENT in its sole discretion for any reason or no reason at all.  LESSEE shall have no recourse in law or in equity in the event GOVERNMENT rejects an Extension Request, and no more than two Extension Requests shall be requested or approved.

Release Rate.  LESSEE must submit any Extension Request to LESSOR at least 180 days prior to the end of the current term in order to provide sufficient time for completion of an updated Appraisal which is required to estimate the Market Rental Value of the leased lands.  The appraisal cost shall be borne by the LESSEE.  The appraisal will be ordered and managed by the NAVFAC Southwest Senior Appraiser to ensure that all Federal Appraisal Standards are met.

The trial court concluded it could not consider the amendment.  It sustained without leave to amend the County's demurrer to Glovis's amended complaint.

DISCUSSION

*Standard of review*

When the trial court sustains a demurrer, we independently determine whether the complaint states a cause of action.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  We deem

5

true "'all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law.' [Citation.]" (*Ibid*.) We reasonably interpret the complaint, "reading it as a whole and its parts in their context." (*Ibid*.) If the court did not grant leave to amend, we decide whether the plaintiff has shown a "reasonable possibility" that the defects in the complaint can be cured by amendment. (*Ibid*.)

*Legal framework*

"Privately held possessory interests in property owned by the federal government . . . are subject to taxation." (*Connolly v. County of Orange* (1992) 1 Cal.4th 1105, 1118.) A lease of federal property is a possessory interest. (Cal. Code Regs., tit. 18, § 20, subd. (c)(3).) It may be taxed based on the leaseholder's "reasonably anticipated term of possession." (Cal. Code Regs., tit. 18, § 21, subd. (d)(1).) The reasonably anticipated term of possession is the term of possession stated in the lease, unless there is clear and convincing evidence that the lessor and lessee have agreed otherwise. (*Ibid*.) The stated term of possession as of a specific date is the remaining period of possession specified in the lease, including any option to extend the period of possession "if it is reasonable to assume that the option . . . will be exercised." (*Id*., subd. (a)(6).)

*The option*

Glovis contends the assessor miscalculated the lease's stated term of possession because the lease does not include an option to extend its term. We disagree.

"[A]n option is a contract by which the owner of property invests another with the exclusive right to [lease] said property . . . in the future." (*Caras v. Parker* (1957) 149 Cal.App.2d 621, 626.) It is obligatory on the optionor, and cannot

6

be withdrawn or revoked. (*Ibid*.) An option has a "dual nature: on the one hand it is an irrevocable offer, which upon acceptance ripens into a bilateral contract, and on the other hand, it is a unilateral contract [that] binds the optionor to perform an underlying agreement upon the optionee's performance of a condition precedent." (*Palo Alto Town & Country Village, Inc. v. BBTC Company* (1974) 11 Cal.3d 494, 502 (*Palo Alto Town & Country Village*).) It is a legal right that must rest on more than a hypothetical probability of extension. (*San Diego Metropolitan Transit Development Bd. v. Handlery Hotel, Inc.* (1999) 73 Cal.App.4th 517, 531 (*SDMTDB*).)

Whether Glovis's lease with the Navy includes an option is a question for our independent review. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.) We apply familiar rules: We interpret the lease to give effect to the parties' mutual intent at the time of contracting. (Civ. Code, § 1636.) We ascertain that intent from the lease terms alone if they are clear and explicit. (Civ. Code, §§ 1638, 1639.) We give the terms their ordinary and popular meaning unless the parties clearly intended to give them technical or special meanings. (Civ. Code, § 1644.) And we construe the lease as a whole to give effect to every part. (Civ. Code, § 1641.)

Applying these rules here, we conclude that the terms of the lease evidence the parties' mutual intent to grant Glovis the option to extend its possession of the Navy's property past the initial five-year term. Paragraph 2 of the lease clearly and explicitly gives Glovis the exclusive right to lease the Navy's property until 2028. And it contains no language permitting the Navy to withdraw or revoke its offer. That is the definition of an

7

option.  (*Palo Alto Town & Country Village, supra*, 11 Cal.3d at p. 502.)

Other lease terms would be superfluous if Paragraph 2 did not include an option to extend the term of possession. Paragraph 2 defines the *initial* lease term as running from 2013 to 2018, which suggests that other terms may follow.  Similarly, Paragraphs 3.1 and 3.2 specify Glovis's annual rent for the *initial* lease term, while Paragraph 3.3.4 includes a mechanism to determine rent for a term of possession extending past five years. The lease is exempt from the federal five-year contract term limit.  Giving these provisions effect by interpreting Paragraph 2 to include an option is more reasonable than leaving them devoid of purpose. (*Fred A. Chapin Lumber Co. v. Lumber Bargains, Inc.* (1961) 189 Cal.App.2d 613, 620.)

That the Navy must approve the lease extension does not change our conclusion.  An option may include a term that requires approval by the optionor.  (*Ontario Downs, Inc. v. Lauppe* (1961) 192 Cal.App.2d 697, 700-701, 703 (*Ontario Downs*).)  An option may also be conditioned on some future event.  (*Wrather Port Properties, Ltd. v. County of Los Angeles* (1989) 209 Cal.App.3d 517, 522-523.)

State Board of Equalization Property Tax Annotation 220.0350, on which Glovis relies, is inapplicable here.  While that annotation states that a conditional option may not be included in computing a lease's term, it applies only where there has been a change in ownership of taxable real property.  (Property Tax Annotations, Annotation 220.0350, Change in Ownership (Feb. 18, 1999).)  Federal property is exempt from state taxation. (*California Farm Bureau Federation v. State Water Resources Control Bd.* (2011) 51 Cal.4th 421, 443.)  The exercise of an option

8

to extend the lease of tax-exempt real property does not qualify as a change in ownership.  (Rev. & Tax. Code, § 61, subd. (b)(1); Cal. Code Regs., tit. 18, § 462.080, subd. (b)(2).)

The Navy's ability to terminate the lease at will also does not change our conclusion that the lease includes an option.  (*De Luz Homes, Inc. v. County of San Diego* (1955) 45 Cal.2d 546, 554, 574 [upholding valuation based on 75-year term of possession even though lease could be terminated after 50 years].)  That provision is instead relevant to whether it is reasonable to assume the option will be exercised.  (*Kaiser Co. v. Reid* (1947) 30 Cal.2d 610, 618-620.)  We thus conclude that Paragraph 2 gives Glovis a legal right that does not rest on "'mere expectation'" that the lease term will be extended in the future.  (*SDMTDB*, *supra*, 73 Cal.App.4th at pp. 531-532.)

*The lease amendment*

Glovis argues we should consider the 2017 lease amendment to determine whether Paragraph 2 includes an option to extend the term of possession.  We independently review whether to use extrinsic evidence to interpret the lease (*Abers v. Rounsavell* (2010) 189 Cal.App.4th 348, 357), and conclude that there is no need to do so here because the lease is not "reasonably susceptible" to Glovis's proffered interpretation (*Pacific Gas & E. Co. v. G.W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37).

Moreover, the amendment pertains to an issue of fact:  whether the parties intended Paragraph 2 to include an option.  (*Benchley v. Durkee Famous Foods* (1933) 128 Cal.App. 604, 610.)  When a party challenges an issue of fact, this court's review is limited to the administrative record presented to the Board.  (*Bret Harte Inn, Inc. v. City and County of San Francisco*

9

(1976) 16 Cal.3d 14, 23.)  The amendment was not part of the administrative record.

Indeed, the amendment did not even exist when the assessment was made or during the Board proceedings.  An assessment must be based on the facts known to the assessor at the time of valuation.  (*Silveira v. County of Alameda* (2006) 139 Cal.App.4th 989, 1003 (*Silveira*).)  Evidence that only later comes into existence does not render the assessment invalid.  (*Fujitsu Microelectronics, Inc. v. Assessment Appeals Bd.* (1997) 55 Cal.App.4th 1120, 1125; see also *Firestone Tire & Rubber Co. v. County of Monterey* (1990) 223 Cal.App.3d 382, 395 [assessor should not be "held to knowledge obtained after the fact"].)  Here, the assessor was allowed to rely on Paragraph 2 as written, and was not required to "ferret[] out the . . . undisclosed and secret intentions of [the Navy] and [Glovis] relative to the terms of [the] lease."  (*Trabue Pittman Corp. v. Los Angeles County* (1946) 29 Cal.2d 385, 392.)  It would be improper for this court to consider the amendment to undermine the assessor's valuation.  (*Fujitsu Microelectronics*, at pp. 1125-1126.)

But even if we were to do so, we would still conclude that the lease includes an option to extend the term of possession.  Though the amendment removes the word "option" from Paragraph 2, the parties' substantive rights remain the same: 2013 to 2018 remains the *initial* lease term.  Glovis still has the exclusive right to extend its lease to 2028.  The Navy still cannot revoke or withdraw its offer.  The exemption from contract term limits remains intact.  And the mechanism to determine the amount of Glovis's future rent is substantively unchanged.  That the amendment reinforces the Navy's ability to approve or reject an extension request is irrelevant to whether the lease includes

10

an option.  (*Ontario Downs*, *supra*, 192 Cal.App.2d at pp. 700-701, 703.)  Such a privately imposed restriction does not control an assessor's valuation.  (*Carlson v. Assessment Appeals Bd. I* (1985) 167 Cal.App.3d 1004, 1012-1013.)

*Whether the option will be exercised*

Glovis next contends that, even if the lease includes an option to extend the term of possession, the assessor erred when he determined it is reasonable to assume the option will be exercised.  We again disagree.

Leaseholders cannot be "taxed on something they do not have, namely possessory interests extending beyond the terms of their leases."  (*American Airlines, Inc. v. County of Los Angeles* (1976) 65 Cal.App.3d 325, 331.)  But if it is reasonable to assume that a leaseholder's term of possession will be extended, "the assessor can valuate the possessory interest based on a term [that] includes the period of the option."  (*Id.* at p. 329; see Cal. Code Regs., tit. 18, § 21, subd. (a)(6).)  The expectation of extension can be "based on statute [citation] or contract or indeed . . . any real substance at all."  (*American Airlines*, at p. 331.)

Because the assessor enjoys the presumption that he properly performed his duties, Glovis had the burden to show it was not reasonable to assume the extension option would be exercised.  (*Farr v. County of Nevada* (2010) 187 Cal.App.4th 669, 682-683; see Cal. Code Regs., tit. 18, § 321, subd. (a).)  The Board explicitly determined that Glovis did not carry its burden.  Our review is accordingly limited to determining "'whether the evidence compels a finding in favor of [Glovis] as a matter of law.'"  (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838.)  Specifically, we must determine whether Glovis's evidence was uncontradicted, unimpeached, and

11

of such weight that there is no possibility it was insufficient to support the Board's findings. (*Ibid*.)

The evidence Glovis submitted to the Board does not compel the conclusion it was unreasonable to assume the option in Paragraph 2 would be exercised. Glovis first claimed it was not reasonable to assume it would exercise the option because the Navy could terminate the lease at any time. But "the possibility of termination merely affects the value of the possessory interest, not its taxability." (*Silveira, supra,* 139 Cal.App.4th at p. 997.) To claim that the right to lease government land is not properly included in an assessor's valuation, simply because "that right is revocable at the government's will[,] . . . is unbelievable." (*Board of Supervisors v. Archer* (1971) 18 Cal.App.3d 717, 724.)

Glovis next claims it was not reasonable to assume the option would be exercised because the Navy would have to approve any extension. But the evidence established that the Navy had renewed all of Glovis's previous leases, the parties anticipated a long-term business relationship, and the current lease was not subject to the federal five-year contract term limit. And there was no evidence that the Navy did not intend to approve any lease extension.

Finally, Glovis claims it was not reasonable to assume the option would be exercised because any extension would be subject to competitive bidding. But the renegotiation terms in Paragraphs 2 and 3.3.4 imply an exemption from competitive bidding requirements. And a Glovis representative testified that the lease was exempt from such requirements.

This case is like *Silveira, supra,* 139 Cal.App.4th 989, 991, in which the plaintiff claimed the assessor overvalued his month-to-month lease by basing the valuation on a years-long

12

anticipated term of possession. He, like Glovis, asserted that such a valuation conflicted with the decision in *American Airlines*. (*Ibid*.) But in *American Airlines*, there were "'no understandings, agreements, negotiations, or discussions . . . relating to extension of the leases.'" (*Id*. at p. 996.) In contrast, the *Silveira* plaintiff's lease stated it would continue on a month-to-month basis after its initial expiration. (*Id*. at p. 992.) And the plaintiff had continued possession on that basis for more than a decade. (*Ibid*.) That "long history of possession" supported the assessor's years-long valuation. (*Id*. at p. 1000.)

The same is true here. The trial court thus properly sustained the County's demurrer. And, in light of the above, Glovis has failed to show a reasonable probability that the defects in its complaint can be cured.

DISPOSITION

The judgment is affirmed. The County shall recover costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

TANGEMAN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

13

Kevin G. DeNoce, Judge

Superior Court County of Ventura

_____

Croudace & Dietrich, Virginia P. Croudace and Mark A. Nitikman, for Plaintiff and Appellant.

Leroy Smith, County Counsel, Ronda J. McKaig and Jaclyn Smith, Assistant County Counsel, for Defendant and Respondent.