[Civ. No. 396.   Fifth Dist.   Mar. 10, 1965.]

STRIBLING'S NURSERIES, INC., Plaintiff and Respondent, v. COUNTY OF MERCED, Defendant and Appellant.

Willard B. Treadwell, County Counsel, for Defendant and Appellant.

Harold W. Kennedy, County Counsel (Los Angeles), and DeWitt W. Clinton, Deputy County Counsel, as Amici Curiae on behalf of Defendant and Appellant.

James D. Garibaldi, Warren J. Lane and Abe Mutchnik for Plaintiff and Respondent.

STONE, J.—Plaintiff nursery filed an action to recover from defendant County of Merced taxes on nursery stock paid under protest, and received a judgment in the court below. The claim is based upon Agricultural Code section 30.3, which reads as follows: "Inasmuch as the planned production of trees, vines, rose bushes, ornamental plants and other horticultural crops is distinguishable from the production of other products of the soil only in relation to the time elapsing before maturity, plants being produced by nurseries shall be considered to be 'growing agricultural crops' for the purpose of any laws pertaining to the agricultural industry of the State."

Growing crops are exempt from taxation (Const., art. XIII, § 1; Rev. & Tax. Code, § 202) and plaintiff argues that the foregoing language of Agricultural Code section 30.3 brings nursery stock within this exemption.

■ Unquestionably, the Legislature has the power to exempt from taxation plants being produced by nurseries. Article XIII, section 14, of the Constitution delegates to the Legislature the power to "exempt entirely from taxation any or all forms, types or classes of personal property," when exercised by a two-thirds vote of all the members of both houses of the Legislature. Case law has established that nursery stock is personal property. In *Story* v. *Christin*, 14 Cal.2d 592, 595 [95 P.2d 925, 125 A.L.R. 1402], the Supreme Court likened nursery stock to a merchant's stock in trade, personal property. (Accord: *Asato* v. *Emirzian*, 177 Cal. 493, 496 [171 P. 90]; *Jackson & Perkins Co.* v. *Stanislaus County Board of Supervisors*, 168 Cal.App.2d 559 [335 P.2d 976].)

Plaintiff does not emphasize that its claim for tax exemption is made under article XIII, section 14, of the Constitution, probably because an exemption under that constitutional amendment must be specific, that is, expressed in direct terms

or be fairly inferable from the language of the statute. (*Cypress Lawn Cemetery Assn.* v. *City & County of San Francisco*, 211 Cal. 387, 390 [295 P. 813] ; *Pasadena University* v. *County of Los Angeles*, 190 Cal. 786, 791 [214 P. 868].) Agricultural Code section 30.3 does not measure up to this exacting test.

We have stressed article XIII, section 14, of the Constitution, nevertheless, because we think it has a direct bearing upon plaintiff's principal argument that the Legislature intended by Agricultural Code section 30.3 to bring growing nursery stock within the tax exemption given "growing crops" by constitutional amendment article XIII, section 1, and Revenue and Taxation Code section 202.

In considering plaintiff's contention that the Legislature intended to exempt nursery stock from taxation by Agricultural Code section 30.3, we note, first, that the section makes no reference to taxes, or to article XIII, section 1, of the Constitution, or to Revenue and Taxation Code section 202, let alone to a tax exemption. Second, we think it unreasonable to impute to the Legislature an intent to grant a tax exemption circuitously under article XIII, section 1, by a statute as obscurely written for that purpose as Agricultural Code section 30.3, especially when it could grant an exemption directly and expressly under article XIII, section 14.

Plaintiff asks the question, if it was not the intent of the Legislature to exempt nursery stock from taxation, what was the purpose of the act? One answer, pointed out by amici curiae, is that prior to the enactment of Agricultural Code section 30.3 the court, in *People* v. *Asamoto*, 131 Cal. App.2d 22 [279 P.2d 1010], held that flowers and ornamental plants were not intended by the Legislature to be subject to the provisions of various Agricultural Marketing Control Acts. The language of section 30.3 provides that "plants being produced by nurseries shall be considered to be 'growing agricultural crops' for the purpose of any laws pertaining to the agricultural industry of the State." It could well be that the Legislature intended by this language to make nursery stock subject to the regulatory provisions of the California Marketing Act of 1937 (Agr. Code, §§ 1300.10-1300.30), the Agricultural Producers Marketing Law (Agr. Code, §§ 2000-2401), the Agricultural Marketing Law of

1937 (Agr. Code, §§ 2550-2917), and the Agricultural Producers Marketing Law of 1943 (Agr. Code, §§ 3050-3408).

We have discussed legislative intent, not because we think the case turns on this point, but because plaintiff has relied so strongly on this point. We believe a legislative intent to change the meaning of the term "growing crops" in article XIII, section 1, is irrelevant; this because the rules of constitutional interpretation require that a term used in a constitutional amendment must be construed according to the meaning it had at the time the amendment was adopted. Obviously, the Constitution cannot be amended by a statutory enactment. This fundamental rule of constitutional interpretation is stated in *Forster Shipbuilding Co.* v. *County of Los Angeles,* 54 Cal.2d 450, at page 456 [6 Cal.Rptr. 24, 353 P.2d 736], as follows: "Terms used in a constitutional amendment 'must be construed in the light of their meaning at the time of the adoption of the amendment, and cannot be extended by legislative definition, for such extension would, in effect, be an amendment of the constitution, if accepted as authoritative.'"

Thus the question here narrows to the meaning of the term "growing crops" at the time article XIII, section 1, was adopted. Precisely this question was before the court in the case of *Jackson & Perkins Co.* v. *Stanislaus County Board of Supervisors, supra.* In determining the meaning of the term "growing crops" in the posture of article XIII, section 1, the court, in *Jackson & Perkins,* pointed out that under the 1849 Constitution no private property was exempt from taxation, but in 1894 an amendment to article XIII, section 1, exempted "growing crops." Prior to the 1894 amendment, however, the Supreme Court, in *Cottle* v. *Spitzer* (1884) 65 Cal. 456 [4 P. 435, 52 Am.Rep. 305], held that "growing crops" are only such crops as require an annual planting or sowing, or an annual harvesting. Thus, held the court in *Jackson & Perkins,* the *Cottle* definition of the term "growing crops" is the meaning of that term as used in article XIII, section 1.

We find no case overruling either *Cottle* or *Jackson & Perkins.* Therefore the language "growing crops" in article XIII, section 1, of the Constitution does not include growing nursery stock unless it meets the *Cottle* test of annual planting or sowing or an annual harvesting. In this case, plaintiff has not contended that nursery stock meets this requirement.

■ Revenue and Taxation Code section 202 is a codification of article XIII, section 1, of the Constitution. It follows, therefore, that the terminology of Agricultural Code section 30.3 cannot, by implication, enlarge the meaning of the term "growing crops" as used in Revenue and Taxation Code 202 to include nursery stock. In short, the interpretation of section 202 must rest upon the interpretation of the constitutional provision which it codified.

■ Defendant calls our attention to an Attorney General Opinion (62/128, Aug. 22, 1962) and an opinion by tax counsel for the State Board of Equalization, both concluding that Agricultural Code section 30.3 does not exempt nursery stock from taxation. Neither opinion is binding on this court, but they are entitled to great weight as, in *Misasi* v. *Jacobsen,* 55 Cal.2d 303, the Supreme Court said, at page 308 [10 Cal. Rptr. 850, 359 P.2d 282] : "Of particular importance here is the rule that the administrative construction of a statute by those charged with its interpretation and enforcement is entitled to great weight, and courts will generally not depart from such an interpretation unless it is clearly erroneous."

The judgment is reversed.

Conley, P. J., concurred.

Brown (R.M.), J., deeming himself disqualified, did not participate.

Respondent's petition for a hearing by the Supreme Court was denied May 5, 1965.